Case 3:08-cv-00149-ECR-RAM   Document 52   Filed 05/07/09   Page 1 of 10

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| ANTHONY J. BURRIOLA, MARLA A. POLSON, | 3:08-CV-0149-ECR (RAM) |
| Plaintiffs, | **REPORT AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE** |
| vs. | |
| STATE OF NEVADA, et al., | |
| Defendants. | |

This Report and Recommendation is made to the Honorable Edward C. Reed, Jr., Senior United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR IB 1-4. Before the court is Defendants' Motion for Partial Dismissal (Doc. #27). Plaintiffs have opposed (Doc. #48), and Defendants have replied (Doc. #49). After a thorough review of the papers and the relevant legal authority, and with good cause appearing, the court recommends that the motion be granted in part and denied in part.

## I. BACKGROUND

This is a prisoner civil rights complaint. At all relevant times, Plaintiff Anthony Burriola ("Burriola") was in custody of the Nevada Department of Corrections (NDOC) at Nevada State Prison located in Carson City, Nevada. Co-plaintiff Marla Polson ("Polson") is Burriola's sister residing in California. Defendants are various NDOC officials, prison administrators, and employees. The allegations of the complaint are summarized as follows:

Count 1 alleges that Defendants have retaliated against Burriola and Polson for filing a

1

civil suit against them by revoking Burriola's mail privileges. (Doc. #1-2 at 8.)

Count 2 alleges various other acts of retaliation by Defendants, including the following: taking Burriola's personal storage box, performing cell searches in a harassing manner, searching through his legal documents, and refusing to allow him to take pictures with visiting relatives. (*Id.* at 8-9.)

Count 3 alleges an incident where Defendant Tilly unsuccessfully attempted to order various correctional officers to attack Burriola when he refused to accept his legal mail. Burriola also alleges that he is forced to interact with Tilly despite continuing threats of physical violence and his requests to pick up mail from a different member of the prison staff. (*Id.* at 9-10.)

Count 4 alleges an incident where the plaintiff was forced accept his legal mail under a threat of physical violence by Defendant Bianchi. (*Id.* at 10-11.)

Count 5 alleges that Defendant Tilly filed a notice of charges against Burriola which falsely claimed that Burriola had presented a third party as his attorney to receive mail from Polson through that party. Plaintiff also claims that Defendant Lerud participated in the hearing officer's investigation of this complaint and fabricated a rule that Burriola could not receive privileged mail from Polson through a third party unless that individual was a licensed attorney retained by both plaintiffs. As a result of Defendant Lerud's alleged misrepresentatios, Burriola claims that he was found guilty of the disciplinary infraction and confined to "austere Housing cells." (*Id.* at 12.)

Count 6 alleges that Burriola's requests for legal copy work are screened and often denied. As a result, Burriola alleges that he is being denied access to the courts and is forced to submit his copy requests to various parties outside the prison at considerable expense to him. (*Id.* at 12-13.)

Count 7 alleges an incident where Burriola was confronted by Defendant Baca over his continuing problems with Tilly. Plaintiff alleges that Baca threatened him if Burriola continued to employ witnesses in his grievance submissions. (*Id.* at 13-14.)

2

Count 8 challenges the conditions of Burriola's confinement, including the fact that his cellmates smoke, do not speak English, and are members racist gangs. It also alleges that he has been deprived of the following: adequate time to eat his meals, canteen requests, toilet paper, hygiene items, stamps, papers, pencils, and pens. (*Id.* at 14-15.)

Count 9 claims that due to Burriola's disability under the Americans with Disabilities Act, he is precluded from participating in the prison's level system that allows one to earn early release credits. He also alleges that due to his inability to participate in the level system, he is effectively treated as a maximum security prisoner and denied adequate meal portions, sufficient time to eat his meals, and the right to possess hobby craft items and certain hygiene items. (*Id.* at 16-17.)

Based on these allegations, each count of the complaint alleges the violation of multiple federal and state statues and constitutional provisions which are too numerous to list here. (*See* Doc. #1-2 at 6-8.) The plaintiffs claim declaratory, compensatory, and punitive damages in varying amounts for each claim. Defendants move for dismissal based on the failure to exhaust administrative remedies, inadequate standing, and on substantive grounds.

## II. LEGAL STANDARD

"A dismissal under Fed.R.Civ.P. 12(b)(6) is essentially a ruling on a question of law." *North Star Inter'l v. Ariz. Corp. Comm.,* 720 F.2d 578, 580 (9th Cir. 1983) (citation omitted). In considering a motion to dismiss for failure to state a claim upon which relief may be granted, all material allegations in the complaint are accepted as true and are to be construed in a light most favorable to the non-moving party. *Cahill v. Liberty Mut. Ins. Co.,* 80 F.3d 336, 337-38 (9th Cir. 1996) (citation omitted). For a defendant-movant to succeed, it must appear to a certainty that a plaintiff will not be entitled to relief under any set of facts that could be proven under the allegations of the complaint. *Id.* at 338. A complaint may be dismissed as a matter of law for, "(1) lack of a cognizable legal theory or (2) insufficient facts under a cognizable legal claim." *Smilecare Dental Group v. Delta Dental Plan,* 88 F.3d 780, 783 (9th Cir 1996) (quoting *Robertson v. Dean Witter Reynolds, Inc.,* 749 F.2d 530, 534 (9th Cir. 1984)).

A *pro se* plaintiff's complaint must be construed liberally and can only be dismissed where it appears certain from the complaint that Plaintiff would not be entitled to relief. *Ortez*, 88 F.3d at 807. Although allegations of a *pro se* complaint are held to a less stringent standard than formal pleadings drafted by a lawyer, *Haines v. Kerner*, 404 U.S. 519 (1972), sweeping conclusory allegations will not suffice. *Leer v. Murphy*, 844 F.2d 628, 634 (9th Cir. 1988).

### III. DISCUSSION

A.  CO-PLAINTIFF POLSON

It is apparent from the similarity between the signatures that Burriola signed the complaint on behalf of co-plaintiff Polson. According to the Federal Rules, plaintiffs must sign the complaint themselves. Fed. R. Civ. P. 11. One pro se plaintiff cannot sign on behalf of others. 28 U.S.C. § 1654. Therefore, Polson should be dismissed from the complaint. This can be remedied by promptly submitting a duplicate containing her signature. *See* Fed. R. Civ. P. 11(a) ("An unsigned paper shall be stricken unless omission of the signature is corrected promptly after being called to the attention of the attorney or party"); Fed. R. Civ. P. 11, Advisory Committee Notes ("Correction can be made by signing the paper on file or by submitting a duplicate that contains the signature").

B.  ADMINISTRATIVE REMEDIES

The Prison Litigation Reform Act (PLRA) provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The Supreme Court recently clarified that exhaustion cannot be satisfied by filing an untimely or otherwise procedurally infirm grievance but rather that the PLRA requires "proper exhaustion." *Woodford v. Ngo*, 548 U.S. 81, 89 (2006). "Proper exhaustion" refers to "using all steps the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits)." *Id.* (*quoting Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002)) (emphasis in original).

/ / /

This court has interpreted Justice Alito's majority opinion in *Woodford* as setting forth two tests for "proper exhaustion": 1) the "merits test", which is satisfied when a plaintiff's grievance is fully addressed on the merits by the administrative agency and appealed through all the agency's levels, and 2) the "compliance test", which is satisfied when a plaintiff complies with all critical procedural rules and deadlines. *Jones v. Stewart*, 457 F. Supp. 2d 1131, 1134 (D. Nev 2006). "A finding that a plaintiff has met either test is sufficient for a finding of 'proper exhaustion'. Defendant must show that Plaintiff failed to meet both the merits and compliance tests to succeed in a motion to dismiss for failure to exhaust administrative remedies." *Id.*

The failure to exhaust administrative remedies is treated as a matter in abatement and is properly raised in an unenumerated Rule 12(b) motion. *Wyatt v. Terhune*, 315 F.3d 1108, 1119 (9th Cir.2003), *cert. denied*, 540 U.S. 810 (2003). Failure to exhaust administrative remedies is an affirmative defense, and Defendants bear the burden of raising and proving failure to exhaust. *Id.* In deciding a motion to dismiss based on exhaustion, a court may look beyond the pleadings and decide disputed issues of fact without converting the motion into one for summary judgment. *Id.* (citing *Ritza v. Int'l Longshoremen's & Warehousemen's Union*, 837 F.2d 365, 368 (9th Cir. 1988) (per curiam)). If a court concludes that the prisoner bringing a suit has failed to exhaust nonjudicial remedies, "the proper remedy is dismissal of the claim without prejudice." *Id.* at 1120.

For prisoners within the NDOC system, exhaustion of administrative remedies requires complying with the Inmate Grievance Procedure set forth in NDOC Administrative Regulation 740 (AR 740). The administrative process consists of: 1) an Informal Level grievance that is reviewed and responded to by an inmate caseworker; 2) a First Level formal written grievance appealing the informal grievance decision to the warden at the institution where the inmate is housed; and 3) a Second Level grievance appealing the First Level grievance decision, which is decided by the Assistant Director of Operations. *See* Nevada Department of Corrections Administrative Regulations Manual, Regulation 740.02 § 1.1.1.1 (January 5, 2004), *available at* http://www.doc.nv.gov/ar/pdf/AR740.pdf. If an inmate disagrees with the response to any

grievance, he may appeal the grievance to the next level within the prescribed deadlines. *Id.* at § 1.1.1.4.

In this case, Defendants argue that Burriola failed to exhaust Counts 3, 6, and 9 of his complaint. In Count 3, Defendant claims that he was threatened by Defendant Tilly on April 25th, 2007. Defendants submit an affidavit indicating that no grievance related to this matter appears in the prison records. Burriola argues that in one of his grievances, he claimed that there was an "ongoing retaliation and campaign of harassment" and requested that the Inspector General conduct an investigation. (Doc. #48 at 2 [citing grievance number GR200749404].) However, from reading this grievance, it is apparent that it raises an incident occurring on a different date and that was directed toward another correctional officer.[1] The generalized allegation of a retaliatory campaign directed toward Burriola did not provide prison officials with adequate notice to address the events occurring on April 25th, 2007. Neither the compliance nor the merits tests for administrative exhaustion have been satisfied and Count 3 should therefore be dismissed.

Count 6 of the complaint claims that Burriola's legal copy work has been illegally screened. Although Plaintiff filed grievance number 20062755013 relating to his copy work, that document alleges that prison officials are refusing to copy his *personal* copy work. Count 6, however, claims that his *legal* copy work requests have gone unfulfilled. Plaintiff has not properly grieved this issue, and it should also be dismissed.

With respect to Count 9 of his complaint, Burriola claims that he exhausted the available administrative remedies by submitting an inmate request form (also known as a "kite") to Associate Warden LeGrand. This is not a substitute for completing the three-step grievance procedure described in the Administrative Regulations. *See Woodford*, 548 U.S. at 89 (defining proper exhaustion as "using *all* steps the agency holds out") (emphasis added). Administrative Regulation 740 § 1.3.6 provides that an inmate may proceed to the next

---

[1] In fact, the grievance appears to allege the incidents underlying Count IV of the complaint. (Doc. #48 at 2.)

1  grievance level if the prison fails to respond within the applicable period. Therefore, Count 9
2  should be dismissed.
3        Plaintiff's request for a stay of the proceedings so he can properly exhaust his remedies
4  is denied, as his claims in these counts should be dismissed without prejudice.
5  C.    CRIMINAL LAW CLAIMS
6        As a private litigant, Burriola lacks standing to bring their claims pursuant to Nevada
7  Revised Statutes (NRS) §§ 197.200, 200.571, 200.575, and 202.2483, which are criminal
8  statutes defining oppression under color of office, harassment, stalking, and smoking in public
9  areas. Accordingly, these claims should be dismissed.
10 D.    ADMINISTRATIVE PROCEDURES ACT
11       The claims brought pursuant to NRS Chapter 233B should be dismissed because the
12 department of corrections is expressly exempted from this provision. *See* Nev. Rev. St. §
13 233B.039.
14 E.    STATE CONSTITUTION
15       Article I, Section 2 of the state constitution prohibits conduct that would impair the
16 authority of the federal government. *See* Nev. Const. art. I, § 2. Burriola claims that the
17 violation of his rights is tantamount to resisting the federal government. Even assuming this
18 provision gives rise to a private cause of action, the factual allegations of the complaint are
19 inadequate to support this legal theory when liberally construed. Accordingly, the motion to
20 dismiss the claims arising from this provision should be granted.
21       Article I, Section 10 of the state constitution provides the people the right to assembly
22 and the right to "instruct their representatives and to petition the Legislature for redress of
23 Grievances." Nev. Const. art. I, § 10. The allegations of the complaint do not demonstrate that
24 the defendants have adversely affected Burriola's ability to contact his legislative
25 representatives. The claims brought pursuant to this provision should be dismissed.
26 / / /
27 / / /
28

F.     SIXTH AMENDMENT

The claims brought under the Sixth Amendment to the U.S. Constitution should be dismissed because this provision only applies to criminal prosecutions. *See* U.S. Const. art. VI.

G. EIGHTH AMENDMENT

Eighth Amendment claims in the prison context typically fall into one of four categories: excessive force, failure to protect, deliberate indifference to serious medical needs, or inhumane conditions of confinement. *Henderson v. Huibregtse*, 2005 WL 955349, at *3 (W.D.Wis. April 25, 2005). Count 1 alleges an Eighth Amendment violation arising from Burriola's mail privileges being revoked, while Count 2 alleges various acts of retaliatory conduct. The court construes both as challenging the conditions of Burriola's confinement.

Under the Eighth Amendment, prison conditions should not "involve the wanton and unnecessary infliction of pain" or be "grossly disproportionate to the severity of the crime warranting imprisonment." *Rhodes v. Chapman*, 452 U.S. 337, 347, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981). The alleged conduct here does not rise to the level of an Eighth Amendment violation. *See also Farmer v. Brennan*, 511 U.S. 825, 832 (1995) (Eighth Amendment violations must objectively be "serious" in terms of denying the the prisoner "'the minimal civilized measure of life's necessities'") (citations omitted). Moreover, in his opposition, Burriola characterizes his Eighth Amendment claims as arising from the retaliatory threats made against him. (Doc. #48 at 4 ("As All of The Counts Involving 8th Amend Violations, It Is For Those Instances of Retaliatory Threats.") (emphasis in original).) His allegations in neither Count involve retaliatory threats. Therefore, the Eighth Amendment claims should be dismissed from Counts 1 and 2. Because cruel and unusual punishment claims under the state constitution generally follow the same standards as the federal constitution, the claims under Article 1, Section 6 of the Nevada Constitution should be dismissed as well. *See, e.g., Allred v. State*, 120 Nev. 410, 420, 92 P.3d 1246, 1253 (Nev. 2004); *Naovrath v. State*, 105 Nev. 525, 529, 779 P.2d 944, 947 (Nev. 1989).

/ / /

H.   SUBSTANTIVE DUE PROCESS

In Count 4, Plaintiff makes a claim involving retaliatory conduct which the court construes as falling under the substantive component of the Due Process Clause. "[W]here a particular amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing a plaintiff's claims." *Patel v. Pendman*, 103 F.3d 868, 874 (9th Cir. 1996) (citations, internal quotations, and brackets omitted), *overruled in part on other grounds as recognized by Nitco Holding Corp. v. Boujikian*, 491 F.3d 1086 (9th Cir. 2007). The retaliation claim at issue here is more appropriately analyzed under the First Amendment, which the plaintiff also references in this count of the complaint. *See Hines v. Gomez*, 108 F.3d 265, 269 (9th Cir. 1997). Accordingly, the Fourteenth Amendment claim in Count 4 should be dismissed.

## IV. RECOMMENDATION

**IT IS HEREBY RECOMMENDED** that the District Judge enter an Order **GRANTING IN PART** and **DENYING IN PART** Defendants' Motion for Partial Dismissal (Doc. #27) as follows:

- Plaintiff Polson should be **DISMISSED** from the complaint without prejudice.
- The motion to dismiss Counts 3, 6, and 9 based on the failure to exhaust administrative remedies should be **GRANTED** without prejudice.
- The motion to dismiss the claims arising under NRS §§ 197.200 and 200.571 in Counts 1, 2, 4, 5, 7, and 8 should be **GRANTED** with prejudice.
- The motion to dismiss the claims arising under NRS § 200.575 in Counts 4, 5, and 7 should be **GRANTED** with prejudice.
- The motion to dismiss the claims arising under NRS § 233B in Counts 1, 2, 4, 5, and 8 should be **GRANTED** with prejudice.
- The motion to dismiss the claim arising under NRS § 200.2483 in Count 8 should be **GRANTED** with prejudice.
- The motion to dismiss the claims arising under Article I, Sections 2 and 10 of the Nevada Constitution in Counts 1, 2, 4, 5, 7 and 8 should be **GRANTED** with prejudice.

///

- The motion to dismiss the claims arising under the Sixth Amendment of the U.S. Constitution in Counts 2, 4, 5, 7, and 8 should be **GRANTED** with prejudice.

- The motion to dismiss the claims arising under the Eighth Amendment and Article I, Section 6 of the Nevada Constitution in Counts 1 and 2 should be **GRANTED** with prejudice.

- The motion to dismiss the claims arising under the Fourteenth Amendment in Count 4 should be **GRANTED** with prejudice.

The parties should be aware of the following:

1. That they may file, pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of Practice, specific written objections to this Report and Recommendation within ten (10) days of receipt. These objections should be titled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2. That this Report and Recommendation is not an appealable order and that any notice of appeal pursuant to Rule 4(a)(1), Fed. R. Civ. P., should not be filed until entry of the District Court's judgment.

DATED: May 7, 2009.

_____
UNITED STATES MAGISTRATE JUDGE